**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SAYDA MURILLO RIVAS,** **Individually and on Behalf of All Others Similarly Situated,** **Plaintiff,** -against- **BEAUTY SLEEP, INC., MATTRESS DIRECT INCORPORATED and AHMAD SCHUAIB, Jointly and Severally,** **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT** **Jury Trial Demanded** |

Plaintiff Sayda Murillo Rivas ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is former mattress sewer employee at two (2) of Defendants' mattress manufacturing locations, located in Jamaica, New York, and in Paterson, New Jersey. While working for Defendants, Plaintiff typically worked well in excess of forty (40) hours each week

and was paid a flat weekly rate that did not include overtime premiums for hours worked over forty (40) in a given workweek and, for much of Plaintiff's employment, did not compensate her at the statutory minimum wage.  Plaintiff also did not receive legally mandated wage notices or wage statements.

2.    Plaintiff brings this action to recover unpaid minimum wage and overtime premium pay owed to her pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims against Defendants for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.    Plaintiff brings her FLSA claims on behalf of herself and all other similarly situated employees of Defendants and her NYLL claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216 (b).

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

6.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.    Plaintiff Sayda Murillo Rivas ("Rivas") was, at all relevant times, an adult individual residing in Bronx, New York.

8.    Throughout the relevant time period, Rivas performed work for Defendants primarily at their factory located at 177-18 104th Avenue, Jamaica, NY 11433.

9.    At the end of her employment with Defendants, Rivas also performed work for Defendants at their factory located at 101 Thomas St., Paterson, NJ 07503.

10.    Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216 (b), and her consent form is attached hereto.

**Defendants:**

11.    Upon information and belief, Beauty Sleep Inc. is an active New York Corporation doing business as "Beauty Sleep" with its principal place of business at 177-18 104th Avenue, Jamaica, NY 11433.

12.    Upon information and belief, Mattress Direct Incorporated is an active New Jersey corporation doing business as "Mattress Direct" with is principal place of business at 101 Thomas St., Paterson, NJ 07503.

13.    Beauty Sleep Inc. and Mattress Direct Incorporated are hereinafter referred to collectively as the "Corporate Defendants."

14.    The Corporate Defendants' operations are interrelated and unified.

15.    Beauty Sleep Inc. and Mattress Direct Incorporated are joint employers of Plaintiff and the Collective Action Members/Class Members.

16.    Defendant Ahmad Shuaib ("Shuaib" or the "Individual Defendant" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

17.    The Individual Defendant maintained operational control over the Corporate Defendants and managed Beauty Sleep and Mattress Direct by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

18.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in his direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

19.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207 (a).

20.    At all relevant times, each of the Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

22.    At all relevant times, Plaintiff, Collective Action Members and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

23.    Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

24.    At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce and have employed two or more individuals who handled these goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.    Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings her First and Second Causes of Action as a collective action under the FLSA on behalf of herself and the following collective:

> All persons employed by Defendants at any time since July 16, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees (the "Collective Action Members").

26.    A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premiums payments for all hours worked in excess of forty (40) hours per week.

27.    Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

28.    Pursuant to the NYLL, Plaintiff brings her Third through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class:

>All persons employed by Defendants at any time since July 16, 2012 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees (the "Class Members").

29.     <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure.

30.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

31.     Upon information and belief, there are well in excess of forty (40) Class Members.

32.     <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class</u>.  Such common questions will determine Defendants' liability to all (or nearly all) Class Members.  These common questions include, but are not limited to:

a.  whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members at rates no less than the applicable statutory minimum wage for all hours worked in a given workweek;

c.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums when they worked more than forty (40) hours in a given workweek;

d.  whether Defendants failed to provide Plaintiff and the Class Members with a proper wage notice at the beginning of their employment and/or on February 1 of each year, as required by the NYLL;

6

  e. whether Defendants failed to provide Plaintiff and the Class Members with a proper wage statement with her wages, as required by the NYLL;

  f. whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

  g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

33. <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a non-management employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, paid a flat weekly rate, not paid the correct statutory minimum wage throughout the relevant statutory period; not paid overtime premium pay for hours worked over forty (40) hours in a given workweek; not provided proper wage statements with each of her wage payments; and not provided proper wage notices when hired or before February 1 of each year. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

34. <u>Plaintiff and her Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover her own damages.

35. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

37. Defendants are sophisticated parties with substantial resources. The individual

plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

38.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**STATEMENT OF FACTS**

**Defendants' Business**

39.     At all relevant time Defendants have been in the mattress manufacturing and distribution business. Specifically, Defendants own, operate and manage at least two (2) manufacturing locations:

  a.  Beauty Sleep Inc., located at 177-18 104th Avenue, Jamaica, NY 11433; and

  b.  Mattress Direct Incorporated, located at 101 Thomas St., Paterson, NJ 07503.

40.     Upon information and belief, the Individual Defendant is a constant presence in the factories and takes an active role in ensuring that the establishment is run in accordance with his procedures and policies.

41.     Upon information and belief, at all times relevant, the Individual Defendant and his managers have had power over payroll and personnel decisions at Beauty Sleep and Mattress Direct, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

42.     According with the New York Department of State, Division of Corporations Beauty Sleep Inc. has been an active business since May 03, 2013.

43.     Upon information and belief, and according to the New Jersey State Department of

Corporations, Mattress Direct Incorporated, has been an active business since May 20, 2017.

44.     According to the New York State Department of Corporations, Defendant Ahmad Shuaib is the CEO of Beauty Sleep Inc.

45.     Upon information and belief, Defendants' employees are transferred between both factory locations and are subject to the same supervision, job requirements and pay policies at both locations.

## Plaintiff's Work for Defendants

46.     Plaintiff Rivas was employed by Defendants as a mattress sewer from in or around January 2014 through on or about May 22, 2018 (the "Rivas Employment Period").

47.     Plaintiff Rivas worked primarily at Beauty Sleep located in Jamaica, NY, but was also required to work at the Mattress Direct located in Paterson, NJ. In both locations, Plaintiff Rivas was under the supervision and orders of the Individual Defendant.

48.     Throughout the Rivas Employment Period, Plaintiff Rivas worked six (6) days per week, Monday through Saturday, with Sundays off. Each day, Rivas typically worked from approximately 8:00 am through approximately 5:00 pm, for a total of approximately fifty-four (54) hours per week.

49.     For her work, from the beginning of her employment through in or around June 2014, Rivas was paid three hundred and fifty dollars ($350.00) per week; of this amount, two hundred dollars ($200.00) was paid in check and the remaining one hundred and fifty dollars ($150.00) was paid in cash. From approximately June 2014 through in or around January 2015, Rivas was paid four hundred and fifty dollars ($450.00) per week, of which three hundred dollars ($300.00) was paid in check and the remaining one hundred and fifty dollars ($150.00) was paid in cash. From January 2015 through in or around October 2017, Rivas was paid five hundred

dollars ($500.00) per week, of which three hundred dollars ($300.00) was paid in check and two hundred dollars ($200.00) was paid in cash.  From in or around October 2017 through the end of the Rivas Employment Period, Plaintiff was paid a total of five hundred and fifty dollars ($550.00) per week, of which three hundred and fifty dollars ($350.00) was paid in check and two hundred dollars ($200.00) was paid in cash.

50.    Plaintiff Rivas frequently saw the Individual Defendant at the two (2) locations where she performed work for Defendants, overseeing the operations of the business, speaking with the managers, interacting with the clientele, and in general supervising employees.

51.    For a large portion of the Rivas Employment Period, based on the number of hours that Plaintiff worked and the amount that she was paid, Rivas' wages fell below the statutory minimum wage.

52.    Throughout the Rivas Employment Period, Rivas did not receive overtime premiums for hours worked over forty (40) in a given workweek.

53.    Rivas also never received any paystub or other statement with her wages detailing her hourly rate(s) or hours worked for which she was being paid during the pay period.

54.    At no point did Rivas receive a wage notice showing her hourly or overtime rate or any other document detailing the manner in which she was paid.

55.    Plaintiff is aware, based on her observations and conversations with her co-workers, Defendants' policies of paying a low flat weekly rate to employees who worked well in excess of forty (40) hours per week was common to all non-management employees who worked for Defendants.

56.    Plaintiff's work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

57.    The work performed by Plaintiff required little skill and no capital investment.

**Defendants' Unlawful Corporate Policies**

58.    Plaintiff and the Collective Action Members and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages or overtime premiums and failing to provide wage statements or wage notices.

59.    Defendants have not provided Plaintiff or Class Members with proper wage notices at the time of hire or by February 1 of each year.

60.    Plaintiff and Class Members were paid a flat weekly rate, such that they were frequently not paid at the legally required minimum wage rate for all hours worked.

61.    Plaintiff and Class Members received a flat weekly rate that at no time provided overtime premiums consisting of one and one-half (1.5) times their regular hourly rate for workweeks when they worked in excess of forty (40) hours, as Plaintiff and the Class Members typically did.

62.    Defendants have not provided Plaintiffs or Class Members with proper and accurate wage statements each week with their payment of wages.

63.    Plaintiff and the Class Members were often required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week. Additionally, such individuals were not provided with proper wage notices at hiring and/or by February 1 of each year, or proper wage statements with their wage payments each pay period.

64.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

65.    Plaintiff, on behalf of herself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq*., including 29 U.S.C. §§ 206 and 215(a)(2).

67.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

69.    Plaintiff, on behalf of herself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

71.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

72.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Class Members)**

73.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

75.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

76.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

78.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiff and the Class Members)**

79.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.    Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

14

hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

81.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiff and the Class Members)**

82.    Plaintiff, on behalf of themselves and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if

applicable; deductions; and net wages.

84.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and her counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.  Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.  An award of prejudgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' and

expert fees; and

l.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       July 16, 2018

                        Respectfully submitted,

                        **PELTON GRAHAM LLC**


                        By: _____
                        Brent E. Pelton (BP 1055)
                        pelton@peltongraham.com
                        Taylor B. Graham (TG 9607)
                        graham@peltongraham.com
                        111 Broadway, Suite 1503
                        New York, New York 10006
                        Telephone: (212) 385-9700
                        Facsimile: (212) 385-0800

                        *Attorneys for Plaintiff and the putative*
                        *FLSA Collective and Class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Beauty Sleep Inc. y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Sayda Murillo_
Firma

_Sayda y Murillo_
Nombre Escrito